STATE, WILLIAM A. ALDRIDGE ET AL., PROSECUTORS, PLAINTIFFS IN ERROR, v. THE ESSEX PUBLIC ROAD BOARD, DEFENDANT IN ERROR.

1. The supplement to the charter of the Essex Public Road Board, approved April 7th, 1875, construed in several particulars.
2. An assessment for special benefits derived from a public improvement, which has been levied after due notice to the parties concerned, and from which an appeal may be taken, and which constitutes both a lien upon the lands and a personal charge against the owners, is entitled to the attribute of conclusiveness *inter partes*, which ordinarily attends upon judicial decisions.
3. When such an assessment has been levied under a statute which required the assessors to assess all the lands benefited, the legislature cannot authorize a further assessment for the improvement to be levied against other lands of the same owners, so long as the original assessment remains valid against those owners.
4. When questions involving private interests have been settled by the final sentence of a judicial tribunal, the power of re-opening them is by our constitution confided to the judiciary and denied to the legislature.
5. The views expressed in this case, as reported in 19 *Vroom* 366, reaffirmed.
6. If, in the judgment of the assessors, the special benefits of a public improvement extend at all to a lot of land, which is so circumstanced that a reasonable owner would use it or offer it for sale only as an entirety, then they should levy the assessment upon the whole lot, and not merely upon such part of the lot as lies within lines previously fixed by them as the limit of assessable benefits.

On error to the Supreme Court. For opinion of the Supreme Court, see 17 *Vroom* 126.

For the plaintiffs in error, *John L. Blake* and *T. N. McCarter*.

For the defendant in error, *John W. Taylor*.

The opinion of the court was delivered by

DIXON, J. These writs of error bring up the adjudication of the Supreme Court affirming certain re-assessments made

on behalf of the Essex Public Road Board for the construction of Bloomfield avenue, the opinion of that court appearing in 17 *Vroom* 126. Upon the first hearing of these writs, a judgment of reversal was pronounced for the reasons stated in 19 *Vroom* 366. Afterwards, on petition of the defendant in error, a re-argument was ordered, and the causes are now again ready for decision.

Several objections urged by the plaintiffs in error against these re-assessments turn on the supplement to the charter of the defendant, approved April 7th, 1875 (*Pamph. L., p.* 458), which reads as follows: "That where any assessment made under said act or any supplement thereto has been or shall be set aside, only as to the prosecutor or prosecutors of any writ or writs of *certiorari*, by any court of review, the court, or any judge thereof, shall thereupon order a new assessment and appoint the same or other assessors to re-assess the amount of the assessments so set aside, together with the lawful interest accrued thereon, the costs and expenses of such review and of such re-assessment, to be estimated and laid before them by the Essex Public Road Board; and said assessors so appointed shall proceed as provided in respect to the original assessment, and report to the said board; but in making such re-assessment no tracts or lots of land originally assessed for the benefits of the said improvement, and the original assessments upon which shall not have been set aside, shall be liable to be re-assessed, but the same shall be exempt from such re-assessment."

These objections may be dealt with in the order in which they are suggested on the face of this supplement.

First, it is urged that the supplement authorizes a re-assessment only when the assessment set aside *had been made* before the supplement was enacted, while the present re-assessment is in place of one made in 1876. We think this construction too narrow. The word "*made*" is here used in a sense indefinite as to time.

Next, the plaintiffs insist that the supplement applies only in cases where the assessment has been set aside as to the

prosecutors by whose writs of *certiorari* that very assessment was reviewed, whereas here the assessment of 1876 was set aside *in toto*, and not merely as to the prosecutors, who brought it up for review. But the language of the supplement is broader than the interpretation thus contended for. It reaches to "*any* assessment  *  *  *  set aside only as to the prosecutors of *any* writs of *certiorari*," and this includes the case in hand, for the assessment of 1876 was itself a reassessment in lieu of one made in 1873, which had been set aside by the Supreme Court only as to the prosecutors of the writs of *certiorari* by which it had been brought up, and the whole assessment of 1876 was against those prosecutors; consequently, though set aside *in toto*, the case was still within the terms of this statute. We think, also, that the power given by the supplement was not exhausted by a single exercise.

Another objection is that assessors appointed under this supplement have no right to determine for themselves what lands are benefited, but are limited to the making of an assessment upon those lands which the original assessors deemed to be benefited. This is, in argument, supported by reference to section 13 of the supplement of February 16th, 1870 (*Pamph. L., p.* 181), where the "assessment" is spoken of as distinct from the "determination" of the area of benefits, and by which assessors for the review thereby authorized are confined to the land originally assessed. But this argument is unsatisfactory, since in that same section the word "assessment" is sometimes plainly used to include the determination referred to, as it ordinarily does include it, and the terms of the supplement of 1875 point, not to the duties of any *reviewing* assessors, but to those of the *original* assessors, as the guide for assessors appointed under it. These assessors are to proceed as provided *in respect to* the original assessment—that is, to perform the duties enjoined, *with the view* of making the original assessment, and the determination for themselves of the area of benefits is a step to that end.

Further objection is made because the assessors, although

they enlarged the area of benefits beyond what had previously been determined, so that it embraced lands belonging to persons originally assessed, who had not disputed the original assessment, yet they decided that such lands were now legally exempt, and cast upon the public the burden which, but for such ownership, those lands would have been required to bear. While the plaintiffs concede that the lands on which the original assessment still remains are not liable to any further assessment, because of the last clause of the supplement of 1875, they insist that other lands, now in this re-assessment adjudged to be benefited, are not exempt merely because they belonged to the owners of the lands thus expressly relieved from an additional burden. There is force in this claim, but in the opinion of the court it should not prevail. The original assessment is, according to the statutes, to be levied, in each municipality, upon all the lands benefited, and is declared not only to be a lien upon the lands assessed, but also to be collectible by suit in an action on the case against the owners of such lands. It is to be made after due notice to the parties concerned, for whom also a right of appeal is provided besides the remedy by *certiorari*. The assessment thus acquires the aspect of a judicial adjudication between the road board, upon the one side, and the owners, personally, on the other, establishing that the designated lands are benefited to the extent indicated; that no other lands in the municipality are benefited at all, and that the owners shall pay the several sums charged against them, and no more, for the improvement made. So long as this adjudication stands, it seems entitled to the attribute of conclusiveness *inter partes*, which ordinarily attends upon judicial decisions. *City of Elizabeth* v. *Hill*, 10 *Vroom* 555; *Davenport* v. *City of Elizabeth*, 12 *Id.* 362; *Fuller* v. *City of Elizabeth*, 13 *Id.* 427. Although, by expressly exempting from any re-assessment only those lands against which the original assessment remains, the last clause in the supplement of 1875, perhaps, tacitly implies a legislative intent that other benefited lands may be covered by the re-assessment, even though belonging to the same owners, yet

as this statute was enacted after the rights of parties had become fixed by the original assessment of 1873, it cannot avail, *per se*, to take those rights away. When questions involving private interests have been settled by the final sentence of a judicial tribunal, the power of re-opening them is by our constitution confided to the judiciary and denied to the legislature. *Cooley's Const. Lim.* 95; *Maxwell* v. *Goetschius*, 11 *Vroom* 383, 390. If this determination resulted in increasing the private, special imposition upon the plaintiffs, they would not, *quoad hoc*, be bound by the adjudication; for with regard to them as individuals the assessment has been judicially set aside, but its sole effect will be to augment the public burden by requiring taxation to meet what would otherwise have been charged upon the lands of these exempted owners; and as the public, including these plaintiffs as members of it, were, in the proceedings which the original assessment still closes, represented by the road board, whatever estops it binds them. This feature of the assessment is therefore not considered erroneous.

The other objections presented are properly disposed of in the opinion rendered in the Supreme Court, except two, which we think valid.

One of these relates to the inclusion of the price paid for the Newark and Pompton turnpike as an assessable expense. On this point we adhere to the views expressed in 19 *Vroom* 366.

The other is based upon the fact that the assessors, having decided that land lying outside of parallel lines drawn fifteen hundred feet from Bloomfield avenue on each side was not benefited by the improvement, refrained from assessing such parts of lots as lay beyond those lines, and assessed the parts lying within them, no matter how the lines bisected the lots. Such a method of assessment is likely to be unreasonable and injurious to the landowner. If the size and situation of a plot of ground, or if the improvements upon it be such as to render it fit for use only as an entirety, then it involves an absurdity to say that a part is benefited but the whole is not.

And if the statutory mode of collecting the assessment, by sale of the land assessed, be pursued, the consequence in such cases must be that a valuable parcel of land will be divided into two valueless pieces, and so the estate of the owner will be wasted. The assessors' map shows that in many instances assessments of this character were levied; often a few feet of the fronts of lots were assessed, leaving the rears liable to be cut off by sale from all access to the public road; or gores, manifestly worthless of themselves; and even the rooms of dwellings, it is said, were cut in two. This injustice is not obviated by the fact that the owner may prevent a sale by paying the assessment; he may be unable to do so; and common sense requires, as does also the language of the statutes, that when a man's property is to be sold under legal process, it shall not be offered in worthless fragments. If the assessors conclude that the special benefits of the improvement extend to any lot of land, which is so circumstanced that a reasonable owner would use it or offer it for sale only as an entirety, then they should levy the assessment upon the whole lot. In the case before us, it is plain that the assessment was made upon a contrary view of the law.

Let the judgment of the Supreme Court affirming the assessment be reversed, and let the assessment be remitted to that court, in order that such proceedings may be had, in conformity with this opinion, as the statutes provide.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, MAGIE, SCUDDER, BROWN, CLEMENT, COLE, McGREGOR, WHITAKER. 10.